## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 3:23-po-84 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | |
| ANDREW CROOKS, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER

This matter is before the Court upon Defendant Andrew Crooks' Motion to Dismiss (Doc. #38), the Government's Response (Doc. #53), Defendant's Reply (Doc. #54), Defendant's Supplemental Brief (Doc. #63), and the Government's Supplemental Brief (Doc. #65).

Defendant moves to dismiss Counts 3 and 4 of the Information because assimilation of Ohio law under 18 U.S.C. §§ 7 and 13 is improper. (Doc. #38).

### I.     Background

The Government initially filed an Information against Defendant on September 6, 2023. (Doc. #1). The Information charged Defendant with five misdemeanor offenses[1] arising from conduct allegedly occurring on or about August 27, 2023. *Id.*

As relevant here, Count 3 charged Defendant with knowingly causing another to believe that the offender would cause serious physical harm to the person or property of the other person,

---

[1] Specifically, the Information charged Defendant with one count of Simple Assault under 18 U.S.C. § 113(a)(4) and four counts of violating the Assimilative Crimes Act, 18 U.S.C. §§ 7 and 13, as assimilating the Ohio Revised Code: Count Two—Child Endangerment in violation of Ohio Rev. Code § 2919.22(A); Count Three—Aggravated Menacing in violation of Ohio Rev. Code § 2903.21; Count Four—Domestic Violence in violation of Ohio Rev. Code § 2919.25; and Count Five—Disorderly Conduct in violation of Ohio Rev. Code § 2917.11(A)(1). (Doc. #1).

the other person's unborn, or a member of the other person's immediate family, in violation of 18 U.S.C. §§ 7 and 13 and Ohio Rev. Code § 2903.01.  (Doc. #1, *PageID* #2).  Count 4 of the Information charged Defendant with knowingly causing or attempting to cause physical harm to a family or household member, in violation of 18 U.S.C. §§ 7 and 13 and Ohio Rev. Code § 2919.25. *Id.*

## II.    The ACA

The Assimilative Crimes Act (ACA) "assimilates into federal law, and thereby makes applicable on federal enclaves such as Army [and Air Force] bases, certain criminal laws of the State in which the enclave is located."  *Lewis v. United States*, 523 U.S. 155, 158, 118 S. Ct. 1135 (1998).  The ACA provides:

> Whoever within or upon any [federal enclave] is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State ... in which such place is situated, ... shall be guilty of a like offense and subject to like punishment.

18 U.S.C. § 13(a).

"The ACA's basic purpose is one of borrowing state law to fill gaps in the federal criminal law that applies on federal enclaves."  *Lewis*, 523 U.S. at 160 (citing and quoting parenthetically *Williams v. United States,* 327 U.S. 711, 718-19, 66 S.Ct. 778 (1946) ("ACA exists 'to fill in gaps' in federal law where Congress has not 'define[d] the missing offenses.'")) (other citations omitted). "Under the Act, if there is no federal criminal law on point, and if a defendant's conduct would have been a state-law crime but for the fact that it was committed on federal territory, it 'becomes a federal offense....'"  *United States v. Pego*, 567 F. App'x 323, 329 (6th Cir. 2014) (quoting, in part, *United States v. Couch*, 65 F.3d 542, 543 (6th Cir. 1995)).

The Supreme Court has outlined a two-step test to determine whether a state crime may be assimilated under the ACA:

> [A] court must first ask the question that the ACA's language requires: Is the defendant's "act or omission ... made punishable by *any* enactment of Congress." 18 U.S.C. § 13(a) (emphasis added). If the answer to this question is "no," that will normally end the matter. The ACA presumably would assimilate the statute. If the answer to the question is "yes," however, the court must ask the further question whether the federal statutes that apply to the "act or omission" preclude application of the state law in question, say, because its application would interfere with the achievement of a federal policy, because the state law would effectively rewrite an offense definition that Congress carefully considered, or because federal statutes reveal an intent to occupy so much of a field as would exclude use of the particular state statute at issue[.]

*Lewis*, 523 U.S. at 164–65 (internal citations omitted). If any of these situations apply, then the state statute should not be assimilated. *See also United States v. Harris*, 10 F.4th 1005, 1013 (10th Cir. 2021) (citing *Lewis*, 523 U.S. at 164) ("*Lewis*'s second step is designed to be a fairly broad inquiry, represented by a non-exhaustive list of circumstances in which a federal statute would preclude application of a state law.").

The Supreme Court explained that the variety and number of state and federal criminal laws preclude an "automatic general answer" to the second step. *Lewis*, 523 U.S. at 165. Nevertheless, "it seems fairly obvious that the Act will not apply where both state and federal statutes seek to punish approximately the same wrongful behavior—where, for example, differences among elements of the crimes reflect jurisdictional, or other technical, considerations, or where differences amount only to those of name, definitional language, or punishment." *Id.* at 165 (citing *United States v. Adams,* 502 F.Supp. 21, 25 (S.D. Fla. 1980) (misdemeanor/felony difference did not justify assimilation)). Further, "assimilation may not rewrite distinctions among the forms of criminal behavior that Congress intended to create." *Id.* (citing *Williams,* 327 U.S. at 717-18) (nothing in the history or language of the ACA to indicate that once Congress has "defined a penal offense, it has authorized such definition to be enlarged" by state law). Thus, there is "no gap for the Act to fill where a set of federal enactments taken together make criminal a single form

3

of wrongful behavior while distinguishing (say, in terms of seriousness) among what amount to different ways of committing the same basic crime." *Id.*

### III. Count 4: Domestic Violence

Defendant contends that two federal statutes, 18 U.S.C. § 2261 and 18 U.S.C. § 113, preclude assimilation of Ohio domestic violence statute, Ohio Rev. Code § 2919.25. (Doc. #38, *PageID* #s 195-96).

The Ohio domestic violence statute provides, as relevant here:

> (A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
> (B) No person shall recklessly cause serious physical harm to a family or household member.
> (C) No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member.

Ohio Rev. Code § 2919.25. As charged in this case, a conviction under this provision is a misdemeanor of the first degree, punishable by a jail term of not more than 180 days. *Id.* § 2919.25(D)(2); *see also* Ohio Rev. Code § 2929.24(A)(1).

The federal domestic violence statute, entitled "Interstate domestic violence," provides, in part:

> A person who … is present within the special maritime and territorial jurisdiction of the United States with the intent to kill, injure, harass, or intimidate a spouse, intimate partner, or dating partner, and who, in the course of or as a result of such … presence, commits or attempts to commit a crime of violence against that spouse, intimate partner, or dating partner, shall be punished as provided in subsection (b).

18 U.S.C. § 2261(a)(1). Under subsection (b), the penalties vary depending on the seriousness of the injury to the victim. If serious bodily injury to the victim results, the crime is punishable by not more than ten years imprisonment. *Id.* § 2261(b)(3). If none of the other subsections apply, the crime is punishable by not more than five years imprisonment. *Id.* § 2261(b)(5).

The federal assault statute, entitled "Assaults within maritime and territorial jurisdiction," provides in relevant part:

> Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows:
> …
> (7) Assault resulting in substantial bodily injury to a spouse or intimate partner, a dating partner, or an individual who has not attained the age of 16 years, by a fine under this title or imprisonment for not more than 5 years, or both.
> (8) Assault of a spouse, intimate partner, or dating partner by strangling, suffocating, or attempting to strangle or suffocate, by a fine under this title, imprisonment for not more than 10 years, or both.

18 U.S.C. § 113(a).

In the Government's view, "18 U.S.C. § 2261(a) only encompasses conduct towards or affecting a spouse, intimate partner, or dating partner and 18 U.S.C. § 113 only encompasses conduct which actually causes harm to someone." (Doc. #53, *PageID* #285). The Government asserts that neither federal statute "encompass the conduct of knowingly causing a family member or household member to believe that the offender will cause imminent physical harm to the family or household member." *Id.*

Although the Government may be correct that the conduct described in Ohio Rev. Code § 2919.25(C)—knowingly causing a family or household member to believe that the offender will cause imminent physical harm to the family or household member—is not encompassed by either federal statute, the Government did not charge Defendant with that offense. Instead, the Government asserts that Defendant "did knowingly cause or attempt to cause physical harm to a family or household member"—a violation of Ohio Rev. Code § 2919.25(A). (Doc. #1, *PageID* #2). Thus, the Court need not decide whether Ohio Rev. Code § 2919.25(C) can be assimilated under the ACA.

Moreover, the Government's argument regarding the alleged victim is similarly inapplicable in this case. The Ohio statute prohibits causing or attempting to cause physical harm to a family or household member. "Family or household member" is defined as any of the following:

> (a) Any of the following who is residing or has resided with the offender:
> (i) A spouse, a person living as a spouse, or a former spouse of the offender;
> (ii) A parent, a foster parent, or a child of the offender, or another person related by consanguinity or affinity to the offender;
> (iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender.
> (b) The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent.

Ohio Rev. Code § 2919.25(F).

In contrast, the federal domestic violence statute only penalizes conduct against a "spouse, intimate partner, or dating partner."[2] 18 U.S.C. § 2261(a)(1). Thus, to the extent the victim was, for example, a child of the offender or the offender's spouse, the conduct is not punishable by the federal domestic violence statute. However, to the extent that the victim is a person who shares a child in common with the alleged offender—as is the case here[3]—the conduct is punishable by the federal domestic violence statute. *See* 18 U.S.C. § 2266(7) ("spouse or intimate partner" includes "a person who shares a child in common with the abuser"). Therefore, in this case, Defendant's

---

[2] Spouse or intimate partner includes "(I) a spouse or former spouse of the abuser, a person who shares a child in common with the abuser, and a person who cohabits or has cohabited as a spouse with the abuser; or (II) a person who is or has been in a social relationship of a romantic or intimate nature with the abuser, as determined by the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship …." 18 U.S.C. § 2266(7)(a)(i). The term 'dating partner' refers to a person who is or has been in a social relationship of a romantic or intimate nature with the abuser." 18 U.S.C. § 2266(10)

[3] In the Government's Proposed Jury Instructions, the Government included proposed instructions for Counts 2-5 for consideration by the Court. (Doc. #35). In the proposed instruction for Count 4, the Government identifies the victim as S.E. *Id.* at 138. Defendant and S.E. share a child in common. *See* Doc. #30.

alleged act—knowingly causing or attempting to cause physical harm to a person who shares a child in common with the alleged offender—is punishable by the federal domestic violence statute.

Accordingly, the Court must turn to the second part of the *Lewis* test—whether the federal domestic violence statute (18 U.S.C. § 2261(a)(1)) precludes application of the Ohio domestic violence statute (Ohio Rev. Code. § 2919.25). As Defendant points out, the Violence Against Women Act (VAWA) was passed "[a]s a response to the 'escalating problem of violence against women' and in recognition of the severe toll such crimes have on our society in terms of 'health care, criminal justice, and other social costs[.]'" *United States v. Page*, 167 F.3d 325, 326 (6th Cir. 1999) (Moore, C.J., *concurring*) (citing S.Rep. No. 103–138, at 37, 41 (1993) (proposed VAWA of 1993); Pub.L. No. 103–322, 108 Stat. 1796, 1902–55 (1994)). Among numerous other provisions, the Act criminalized interstate domestic violence. *See* VAWA § 40221(a), 108 Stat. at 1926–31; 18 U.S.C. § 2261. Both the Government and Defendant correctly note that when the federal domestic violence statute under VAWA was first passed, it penalized individuals "who travel[] across a State line or enter[] or leave[] Indian country[.]" Violent Crime Control and Law Enforcement Act of 1994, PL 103–322, 108 Stat 1796 (Sept. 13, 1994). (Doc. #63, *PageID* #317); (Doc. #65, *PageID* #323). The Government argues that this language "very clearly indicates that Congress' intent in promulgating these statutes was to address the issue of perpetrators chasing their victims across state lines." (Doc. #65, *PageID* #323). Although the Government may be correct, Congress amended 18 U.S.C. § 2261 in 2006 to include acts "within the special maritime and territorial jurisdiction of the United States[.]" Violence Against Women and Department of Justice Reauthorization Act of 2005, PL 109–162, 119 Stat 2960 (Jan. 5, 2006). Thus, regardless of whether Congress initially intended to punish only those who cross state lines, Congress ultimately included those who commit the offense within the special maritime and territorial

jurisdiction of the United States. *See* 18 U.S.C. § 2261. The change in the federal domestic violence statute to specifically include crimes on federal property suggests that Congress intended to cover the field of domestic violence against spouses, intimate partners, or dating partners on federal property.

Furthermore, the comprehensive nature of the federal domestic violence statute suggests that Congress "inten[ded] to occupy so much of the field as would exclude use of the particular state statute at issue." *Lewis*, 523 U.S. at 164. The federal domestic violence statute criminalizes both crimes of violence and attempts to commit crimes of violence. 18 U.S.C. § 2261(a)(1). Further, it encompasses a wide range of harmful intent, from intent to intimidate all the way to intent to kill. *Id.* The wide spectrum of conduct prohibited by the federal domestic violence statute demonstrates a "considered legislative judgment" to punish a variety of behavior in federal jurisdictions. *Lewis*, 523 U.S. at 169.

Additionally, the statute broadly covers crimes against spouses, intimate partners, or dating partners. Notably, the term "spouse or intimate partner" includes "any other person similarly situated to a spouse who is protected by the domestic or family violence laws of the State or tribal jurisdiction in which the injury occurred or where the victim resides." 18 U.S.C. § 2266(7)(B). Congress' inclusion of those individuals who are protected under State law suggests that Congress intended to occupy so much of the field as would exclude use of the state domestic violence statute.

Finally, the breadth of possible sentences—ranging from less than five years to life imprisonment depending on the harm to the victim—suggests that Congress intended to provide complete coverage over all types of domestic violence. *See Lewis*, 523 U.S. at 169 (concluding that the "extreme breadth of the possible sentences" reinforced the conclusion that there was "no gap for the [state's] statute to fill").

The ACA is only meant to fill gaps in state law. Under the alleged facts in this case, there is no gap for Ohio's statute to fill. Accordingly, the undersigned finds that Ohio's domestic violence statute, Ohio Rev. Code § 2903.21, cannot be assimilated under the ACA.[4] Therefore, Count 4 must be **DISMISSED**.

## IV. Count 3: Aggravated Menacing

Defendant contends that the federal stalking statute, 18 U.S.C. § 2261A, precludes assimilation of the Ohio aggravated menacing statute, Ohio Rev. Code § 2903.21. (Doc. #38, *PageID* #s 197-98).

The Ohio aggravated menacing statute provides: "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family." Ohio Rev. Code § 2903.21(A); *see State v. Jones*, 2020-Ohio-5477, ¶ 4, 2020 WL 7024371, at *1 (Ohio App. 6 Dist., 2020) ("The elements of aggravated menacing, R.C. 2903.21(A), are: "knowingly cause another to believe that the offender will cause serious physical harm to the person."). As charged in this case, aggravated menacing is a misdemeanor of the first degree, punishable by a jail term of not more than 180 days. *Id.* § 2903.21(B); *see also* Ohio Rev. Code § 2929.24(A)(1).

The federal statute, entitled "Stalking," provides, as relevant here:

> Whoever-- … is present within the special maritime and territorial jurisdiction of the United States … with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, and in the course of, or as a result of, such … presence engages in conduct that--
> (A) places that person in reasonable fear of the death of, or serious bodily injury to--
> (i) that person;

---

[4] In light of the conclusion that the federal domestic violence statute precludes assimilation of the Ohio domestic violence statute, the undersigned need not consider whether the federal assault statute also precludes assimilation.

> (ii) an immediate family member (as defined in section 115) of that person;
> (iii) a spouse or intimate partner of that person; or
> (iv) the pet, service animal, emotional support animal, or horse of that person; or
>
> (B) causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person described in clause (i), (ii), or (iii) of subparagraph (A) ….

18 U.S.C. § 2261A(1)(A). *See United States v. Al-Zubaidy*, 283 F.3d 804, 808-09 (6th Cir. 2002) ("Section 2261A has three main elements: (a) that interstate travel occurred [or presence with the special maritime and territorial jurisdiction of the United States]; (b) that Defendant's intent was to injure or harass another person; and (c) that the person he intended to harass or injure was placed in reasonable fear of death or serious bodily injury to herself or a member of her family as a result of that travel.") (citations omitted). As used in this statute, "the term 'serious bodily injury' means bodily injury which involves-- (A) a substantial risk of death; (B) extreme physical pain; (C) protracted and obvious disfigurement; or (D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty[.]" 18 U.S.C. § 1365(h)(3); *see* 18 U.S.C.§§ 2266, 2119(2).

The Government concedes that aggravated menacing under Ohio Rev. Code § 2903.21 would be subsumed by 18 U.S.C. § 2261A. (Doc. #53, *PageID* #287). However, the Government asserts menacing under Ohio Rev. Code § 2903.22 is a lesser included offense of aggravated menacing. *Id.* at 286-87. The Government contends that menacing is not subsumed by 18 U.S.C. § 2261A. (Doc. #53, *PageID* #287).

The Ohio menacing statute provides: "No person shall knowingly cause another to believe that the offender will cause *physical harm* to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family." Ohio Rev. Code § 2903.22(A)(1) (emphasis added). Thus, while menacing only requires physical harm, aggravated

10

menacing requires that the offender cause serious physical harm.  Ohio Rev. Code §§ 2903.21(A),

2903.22(A)(1).  Ohio law defines "physical harm" as "any injury, illness, or other physiological

impairment, regardless of its gravity or duration."  Ohio Rev. Code § 2901.01(A)(3).  In contrast,

"serious physical harm" means any of the following:

> (a) Any mental illness or condition of such gravity as would
> normally require hospitalization or prolonged psychiatric treatment;
> (b) Any physical harm that carries a substantial risk of death;
> (c) Any physical harm that involves some permanent incapacity,
> whether partial or total, or that involves some temporary, substantial
> incapacity;
> (d) Any physical harm that involves some permanent disfigurement
> or that involves some temporary, serious disfigurement;
> (e) Any physical harm that involves acute pain of such duration as
> to result in substantial suffering or that involves any degree of
> prolonged or intractable pain.

*Id.* § 2901.01(A)(5).

However, the Government did not charge Defendant with menacing under Ohio Rev. Code

§ 2903.22(A)(1).  Instead, in Count 3, the Government asserts that Defendant "did knowingly

cause another to believe that the offender would cause *serious physical harm* to the person or

property of the other person, the other person's unborn, or a member of the other person's

immediate family."  (Doc. #1, *PageID* #2) (emphasis added).  Indeed, the Government later

provided a second bill of particulars regarding Counts 2 and 3.  (Doc. #30).  With respect to Count

3, the Government stated:

> The Government asserts a violation of 18 USC 7 and 13 and ORC
> 2903.21. The alleged victims in this count are "S.E.", "K.C.",
> "A.M.", "K.M.", and "C.W.". In this case, it is reasonable, based on
> the casefile, that "K.C.", "A.M.", "K.M.", and "C.W." believed that
> the Defendant would cause *serious physical harm* to one of their
> family members – namely "S.E." as the Defendant was striking
> "S.E.", put his hands on "S.E.'s" neck, and attempted to hit "S.E."
> with a baseball bat.  It is also reasonable to believe that "S.E."
> believed *serious physical harm* to her person as she was the target
> of his attack.

*Id.* at 85 (emphasis added).

Under the first step of the *Lewis* test, the Court must ask whether the defendant's act is made punishable by any enactment of Congress. *Lewis*, 523 U.S. at 164-65. Here, as the Government concedes, the Defendant's alleged act is made punishable by the federal stalking statute, 18 U.S.C. § 2261A. Thus, regardless of whether a lesser charge would not be covered by a federal statute, the answer to the first step of the *Lewis* test in this case is yes.

The Court must therefore turn to the second step of the *Lewis* test: Does the federal stalking statute indicate an intent to punish conduct such as the defendant's to the exclusion of Ohio's aggravated menacing statute? *Lewis*, 523 U.S. at 168. Although both the Government and Defendant address the legislative history of 18 U.S.C. §§ 2261 and 2261A together, the federal stalking statute has a separate history. In 1996, Congress amended title 18 of the United States Code, to include the federal stalking statute, 18 U.S.C. § 2261A. National Defense Authorization Act for Fiscal Year 1997, PL 104–201, 110 Stat 2422 (Sept. 23, 1996). Unlike the federal domestic violence statute, the first version of the federal stalking statute penalized individuals who committed the offense within the special maritime and territorial jurisdiction of the United States (as well as those who traveled across a state line). *Id.* Thus, contrary to the Government's argument, Congress always intended the statute to punish individuals who commit the offense on federal property.

Moreover, the federal stalking statute, like the federal domestic violence statute, covers a wide spectrum of conduct. It not only criminalizes conduct that places another person in reasonable fear of the death of, or serious bodily injury to, that person or that person's immediate family, spouse, intimate partner, or pet, it also criminalizes conduct that causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to that person or that

person's immediate family, spouse, or intimate partner.  18 U.S.C. § 2261A(1).  It provides that the offender must have intent to kill, injure, harass, intimidate, *or* place under surveillance with intent to kill, injure, harass, or intimidate another person.  *Id.*  Thus, like the federal domestic violence statute, the comprehensive nature of the federal stalking statute suggests that Congress "inten[ded] to occupy so much of the field as would exclude use of the particular state statute at issue."  *Lewis*, 523 U.S. at 164.

Further, the penalties for stalking under § 2261A are generally the same as those for domestic violence under § 2261.  Thus, they range from imprisonment for not more than five years to life.  18 U.S.C. § 2261(b).  Moreover, there is a separate provision with enhanced penalties if the victim is under eighteen years old.  18 U.S.C. § 2261B.  The "extreme breadth of the possible sentences" reinforces the conclusion that there is "no gap for the [state's] statute to fill."  *Lewis*, 523 U.S. at 169; *see Harris*, 10 F.4th at 1014 ("And the broad range of punishments in [the federal statute]—from mere fines to twenty years' imprisonment—gives 'complete coverage' that should not be undermined by the assimilation of the [state] statute.").

Accordingly, the undersigned finds that there is no gap for the Ohio statute to fill.  Thus, Ohio's aggravated menacing statute, Ohio Rev. Code § 2903.21, cannot be assimilated under the ACA, and Count 3 must be **DISMISSED**.

## V.    Conclusion

The federal and Ohio domestic violence statutes "seek to punish approximately the same wrongful behavior."  *Lewis*, 523 U.S. at 165.  The same is true of the federal stalking statute and the Ohio aggravated menacing statute.  Both the federal domestic violence statute and the stalking statute demonstrate that Congress intended them to occupy their respective fields due to their broad definitions, precluded conduct, variety of harmful intent, and range of punishments.  Accordingly,

13

the federal domestic violence statute and the stalking statute preclude application of the Ohio state laws here. For these reasons, Defendant's Motion to Dismiss (Doc. #38) is hereby **GRANTED**. Counts 3 and 4 of the Information filed on September 6, 2023 are therefore **DISMISSED**.[5]

       **IT IS SO ORDERED.**


August 9, 2024                            *s/Peter B. Silvain, Jr.*
                                             Peter B. Silvain, Jr.
                                             United States Magistrate Judge

---

[5] The Court expresses no opinion as to the propriety of the Government filing a superseding information.