UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 3:23-po-84 |
| Plaintiff, | : | |
| vs. | : | Magistrate Judge Peter B. Silvain, Jr. |
| ANDREW CROOKS, | : | |
| Defendant. | : | |

**ORDER**

This matter is before the Court upon Defendant Andrew Crook's Motion in Limine to Exclude Evidence (Doc. #36) and the Government's Response (Doc. #52). Defendant did not file a reply memorandum, and the time for doing so has expired. Accordingly, Defendant's Motion in Limine is now ripe for decision.

I. **BACKGROUND**

The Government initially filed an Information against Defendant on September 6, 2023. (Doc. #1). The Information charged Defendant with five misdemeanor offenses arising from conduct allegedly occurring on or about August 27, 2023. *Id.* Two counts have since been dismissed. (Doc. #66). Thus, there are three counts remaining: Simple Assault under 18 U.S.C. § 113(a)(4) (Count 1), Child Endangerment under 18 U.S.C. §§ 7 and 13 and Ohio Rev. Code § 2919.22(A) (Count 2), and Disorderly Conduct under 18 U.S.C. §§ 7 and 13 Ohio Rev. Code § 2917.11(A)(1) (Count 5). (Doc. #1).

In Count 1, the Government asserts that Defendant assaulted S.E. by striking, beating, or wounding. *Id.* at 1. In Count 2, the Government alleges that Defendant, a person who is the parent,

guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age created a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. *Id.* at 1-2. The victims are K.C., who is Defendant's child, as well as A.M., K.M., and C.W., who are children Defendant knew, cared for, lived with, and acted in loco parentis to. (Doc. #30, *PageID* #85). The Government explained, "The Defendant's actions in beating 'S.E.' and attacking 'S.E.' with a baseball bat created a substantial risk to the physical, emotional, and psychological health and safety of these minor children. Additionally, the Defendant's actions toward the minor children while they were attempting to stop him from his attack on 'S.E.' created a substantial risk to the physical, emotional, and psychological health of the minor children." *Id.* Finally, in Count 5, the Government asserts that Defendant recklessly caused inconvenience, annoyance, and alarm to another by engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior. (Doc. #1, *PageID* #3).

## II. STANDARD OF REVIEW

A motion *in limine* refers to "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984). Like other pretrial motions, motions *in limine* are useful tools "to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999).

The Court should grant a motion to exclude evidence *in limine* "only when [that] evidence is clearly inadmissible on all potential grounds." *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). If that high standard is not met, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Id.* Importantly, denial of a motion to exclude evidence *in limine*

does not necessarily mean that the court will admit the evidence at trial. *See Luce*, 469 U.S. at 41, 105 S.Ct. 460. "[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Id.* at 41-42, 105 S.Ct. 460.

### III.    DISCUSSION

Defendant moves to exclude certain evidence from trial because admission would violate the Federal Rules of Evidence. (Doc. #36). Defendant divides the evidence into eight categories. The Court will address each in turn.

#### A.    Defendant's Immigration Status

Defendant seeks to exclude any and all evidence and testimony related to his immigration status. (Doc. #36, *PageID* #s 140, 143-44). He asserts that his immigration status is "wholly irrelevant to the facts at issue" and would be prejudicial. *Id.* at 143-44.

The Government agrees that Defendant's immigration status is not relevant to the charged offenses and indicates that it does not offer evidence of Defendant's immigration status in its case in chief. (Doc. #52, *PageID* #s 253, 256). However, the Government asks that the Court allow inquiry into Defendant's immigration status if Defendant testifies on his own behalf. *Id.*

In the absence of opposition by the Government, Defendant's request to exclude any and all evidence and testimony related to his immigration status is **GRANTED** to the extent that the Government shall not introduce evidence regarding his immigration status at trial. However, the Court reserves ruling on the issue of whether the Government may use this information to impeach Defendant's testimony, should he offer testimony that makes it relevant and appropriate. Should the attorney for the Government believe circumstances warrant its use, he should alert the Court in order to obtain a ruling before introducing evidence of Defendant's immigration status.

B.    **Defendant's Instagram Posts**

Defendant asks the Court to exclude any and all evidence related to his Instagram posts (attached to Defendant's Motion as Exhibit A (Doc. #36-1)). (Doc. #36, *PageID* #s 140, 144-46). In response, the Government indicates that it does not intend to admit this evidence in its case-in-chief. (Doc. #52, *PageID* #253).

Accordingly, the Court **GRANTS** Defendant's request to exclude any and all evidence and testimony related to Defendant's Instagram posts, as the Government represents that it will not seek to admit this evidence.

C.    **Text Conversation between S.E. and her Sister**

Defendant seeks to exclude any and all evidence and testimony related to a text conversation between S.E. and Defendant's sister dated November 23, 2023. (Doc. #36, *PageID* #140). According to Defendant, in the conversation, S.E. and Defendant's sister "disparage Mr. Crooks['] behavior, his social media use and discuss life updates." *Id.* at 146-47. Defendant's sister also sent S.E. screenshots of messages that Defendant sent her. *Id.* at 147. "In those messages, Mr. Crooks apologizes for 'hurt[ing] the people that truly care about me' and says he did some 'really crazy shit' that 'hurt' SE and his kids." *Id.* Defendant asserts that these texts should be excluded because they are irrelevant, prejudicial, and impermissible character evidence. *Id.* Additionally, Defendant argues that because the screenshots do not clearly show what incident he is speaking out, "if admitted, the Court runs the risk of permitting evidence of prior bad acts in violation of Federal Rule of Evidence 404(b)." *Id.* Defendant does not include copies of the text conversations or screenshots.

In its response, the Government agrees that the text conversation between S.E. and Defendant's sister from November 23, 2023, is not relevant. (Doc. #52, *PageID* #253). However,

4

the Government indicates that it "intends to offer the text conversation and screenshot of the Defendant's conversation with his sister, dated September 27th, 202[3] (prior to the aforementioned conversation) as these are statements against interest pertaining to the charged events, are an admission of guilt, and are therefore relevant and more probative than prejudicial."[1] *Id.*

As the screenshots appear to be from one month after the alleged assault at issue in this case occurred, it seems likely that the conversation relates to the alleged assault. However, the screenshots do not include the context of the conversation. The Government, through testimony, may clarify the context or events discussed. Therefore, the Court will **DEFER** ruling on the admissibility of the screenshots from September 27, 2023. However, as the Government agrees that the November 23, 2023 text conversation between S.E. and Defendant's sister is not relevant, Defendant's request to exclude it is **GRANTED**.

**D.  Defendant's Prior Bad Acts**

Defendant asks the Court to exclude any and all evidence related to alleged prior bad acts of Defendant as contained in the Government's Notice Pertaining to F.R.E. 404(b) (Doc. #28). (Doc. #36, *PageID* #140). The notice included the following six separate instances:

1.  On or about April 2016, the Defendant physically abused "S.E." after attending "S.E.'s" mother's friend's birthday party. The Defendant believed that "S.E." had been "staring at another man." The Defendant got on top of "S.E." and was blowing mucus from his nose onto her face and spitting on her.

2.  On or about May 2016, the Defendant punched "S.E." with a closed fist while in her apartment after attending "S.E.s" high school reunion. Prior to the assault, the Defendant had been outside of the reunion venue talking with his production assistant and left "S.E." inside the venue without her shoes for approximately 2 hours. "S.E." ignored Defendant's argumentative statements while driving home, which caused Defendant to strike "S.E."

---

[1] Although the Government states "September 27th, 2024," based on its parenthetical (indicating that it occurred prior to November 23, 2023 conversation) and attached exhibit (dated September 27, 2023), (Doc. #52, *PageID* #271), the Court assumes that the Government meant "September 27th, 2023."

5

3. On or about October 2017, while pregnant with the shared child, "K.C.", days before the planned 'gender reveal,' "S.E." had looked at Defendant's phone and had seen that he had spoken to approximately 5 different females and indicated that he was "single." "S.E." confronted the Defendant and Defendant punched "S.E." in the face with a closed fist and stated, "your face isn't pregnant, your belly is," or words to that effect.

4. On or about December 2018, Defendant physically abused "S.E." until "S.E.s" mother intervened and told the Defendant that he would have to leave the shared residence – the Defendant refused to leave.

5. On or about February 2021, while stationed at Hill Air Force Base, the Defendant physically abused "S.E." by striking her in the face with a closed fist and pulled the braids out of her hair.

6. On or about April, 2023, at Wright-Patterson Air Force Base, a couple days after an argument at the Goodwill that continued at the residence, pertaining to the Defendant being a "bully," and teasing "S.E." and "K.M.", Defendant physically began "wrestling" with "S.E." for "S.E.s" phone while "S.E." was on the phone with friends talking about the argument.

(Doc. #28, *PageID* #81). The Government asserted that it intends to introduce these alleged incidents "to prove motive; to show intent; to show a plan; and to show an absence of mistake or accident." *Id.* at 82.

Under Fed. R. Evid. 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). "The purpose of this rule is to prevent the jury from inferring that a defendant 'probably committed the crime charged' because she committed other, unrelated crimes." *United States v. Hofstetter*, 31 F.4th 396, 425 (6th Cir. 2022) (quoting *United States v. Emmons*, 8 F.4th 454, 473 (6th Cir. 2021)). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

In determining whether to admit "other acts" evidence under 404(b), the Court must consider: (1) "whether there is sufficient evidence that the other act in question actually occurred;"

6

(2) "whether the evidence of the other act is probative of a material issue other than character;" and (3) "whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect." *Emmons*, 8 F.4th at 474 (quoting *United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013)).

The Government contends that the evidence "shows the Defendant's intent, knowledge, plan, lack of mistake or accident, and is the only means of ascertaining his mental state at the time of the instant offense." (Doc. #52, *PageID* #259). Indeed, according to the Government,

> There is no other evidence that the Government can use to show that the Defendant was well-aware of what occurred during the evening of the assault, that his intent was to assault 'S.E.', that the assault was not an accident, and that he further intended to apologize afterwards and to blame his criminal conduct on a mental disease or defect ….

*Id*. The Government notes that Defendant has sought preadmission of his medical records from the night of the assault and "will admit the 'run reports' from the EMS who responded …." *Id.* at 258. These reports, supported by the testimony of the EMS and Security Force Officers who responded, will show that Defendant stated that "he doesn't know what happened" and that "voices are telling him to kill himself" or words to that effect. *Id.* The Government asserts that these statements "mirror the text conversation" from February 2017 (Gov't Exhibit 8, Doc. #52, *PageID* #s 275-81) and Defendant's email/text message from after the alleged assault (Gov't Exhibits 5 and 6, Doc. #52, *PageID* #s 262-66). *Id.* Moreover, the Government points to two of Defendant's proposed jury instructions—one "pertaining to *mens rea* in anticipation of claiming that the Defendant did not have the ability to form the intent to commit the offenses charged" and one regarding self defense. *Id. See* Doc. #40, *PageID* #s 220-21.

Defendant argues that "the only purpose of admitting this evidence is to show Mr. Crooks *has a propensity toward physical violence and therefore abused SE*." (Doc. #36, *PageID* #150).

7

He argues that the Government has not produced corroborating evidence that these alleged acts occurred. *Id.* at 149. Finally, Defendant contends that even if there was evidence that these alleged acts occurred, that evidence should be excluded because its prejudicial effect outweighs its probative value. *Id.* at 150.

As noted above, the Court must first determine "whether there is sufficient evidence that the other act in question actually occurred[.]" *Emmons*, 8 F.4th at 474. Evidence is sufficient for the purposes of 404(b) "if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *United States v. Bell*, 516 F.3d 432, 441 (6th Cir. 2008) (citing *Huddleston v. United States*, 485 U.S. 681, 689 (1998)); *see also United States v. Bonds*, 12 F.3d 540, 572 (6th Cir. 1993) (finding that testimony from a single eyewitness "amply support[ed]" a finding that the other act occurred). Here, S.E. would testify to her account of what occurred on each of the alleged incidents. This satisfies the Court's first preliminary determination that there is sufficient evidence the "other acts" took place. *Bell*, 516 F.3d at 440-41; *see United States v. Sandoval,* 460 F. App'x 552, 562 (6th Cir. 2012) (quoting *United States v. Johnson,* No. 10–5290, 458 F. App'x 464, 470, 2012 WL 284300, at *4 (6th Cir. Jan. 31, 2012) ("[T]his court has found that "'the testimony of a single witness is sufficient for a reasonable jury to conclude that the defendant committed the prior acts, even where the witness is less than completely reliable.'"); *see also United States v. Tyler*, No. 3:22-CR-066-CHB, 2023 WL 2173190, at *10 (W.D. Ky. Feb. 22, 2023).

Second, the Court must consider "whether the evidence of the other act is probative of a material issue other than character[.]" *Emmons*, 8 F.4th at 474. "Evidence of other acts is probative of a material issue other than character if (1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the

8

evidence is probative with regard to the purpose for which it is offered." *United States v. Rayborn*, 495 F.3d 328, 342 (6th Cir. 2007); *Emmons*, 8 F.4th at 474.

In this case, the Government asserts that the evidence shows Defendant's motive, intent, plan, and an absence of mistake or accident. (Doc. #28, *PageID* #82). Defendant's intent and absence of mistake or accident is material or at issue in this case because the Government must show that Defendant assaulted S.E. by striking, beating, or wounding her. *See United States v. Asher,* 910 F.3d 854, 860 (6th Cir. 2018) ("Evidence showing that a defendant formed a particular intent on a prior occasion may provide insight into his state of mind when he committed the charged offense," in particular where the evidence "shows that the defendant took similar actions in a similar situation."). Based on the limited information before the Court, the undersigned preliminarily finds the evidence set forth in sections 1, 2, 3, and 6 of the Government's Notice is probative of a material issue other than character, namely, Defendant's intent to commit the alleged assault and lack of mistake or accident. In each of these alleged incidents, S.E. angered Defendant, and Defendant allegedly responded by physically assaulting her. The Government asserts that "in all other assaults, the Defendant ultimately took responsibility for his conduct." (Doc. #52, *PageID* #259). This appears to be similar to what the Government alleges occurred in this case. *See United States v. LaVictor*, 848 F.3d 428, 447 (6th Cir. 2017).

However, the Government did not provide any context for the alleged incidents in sections 4 and 5 of its Notice. Therefore, the Court cannot find that those incidents are probative of Defendant's intent or absence of accident/mistake at this time. Accordingly, Defendant's request to exclude the alleged incidents set forth in sections 4 and 5 is **GRANTED**.

Finally, the Court must determine "whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect." *Emmons*, 8 F.4th at 474 (6th Cir.

9

2021) (quoting. *Adams*, 722 F.3d at 810). The third factor requires the Court to consider Fed. R. Evid. 403, which allows exclusion "if [the evidence's] probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see also United States v. Ramer*, 883 F.3d 659, 669–70 (6th Cir. 2018). Unfair prejudice is "defined as the 'undue tendency to suggest a decision based on improper considerations.'" *United States v. Hazelwood*, 979 F.3d 398, 412 (6th Cir. 2020) (quoting *Asher*, 910 F.3d at 861). It occurs "when the prior-act evidence so shocks the conscience that the jury may decide that the defendant is a bad person and deserves to be convicted, even if his guilt were unproven in the instant case, because a bad person deserves punishment." *Id.* (internal quotation marks omitted) (quoting *Asher*, 910 F.3d at 861-62).

Defendant asserts that the evidence is overly prejudicial because "the jury can be 'lured' into finding that Mr. Crooks assaulted SE not because of the evidence presented at trial, but rather past instances of alleged physical abuse." (Doc. #36, *PageID* #151). However, as the Government points out, there is little evidence of Defendant's intent or absence of accident/mistake outside of this evidence. Therefore, the evidence is highly probative. *See LaVictor*, 848 F.3d at 448. There is one exception to this finding. In section 3, the Government asserts that after S.E. confronted Defendant, Defendant punched S.E., who was pregnant with their child, in the face and stated something to the effect of, "your face isn't pregnant, your belly is." (Doc. #28, *PageID* #81). The allegation that Defendant punched S.E. *while she was pregnant*, as well as his statement, are overly prejudicial. Accordingly, S.E.'s pregnancy and Defendant's statement are excluded. Defendant's request to exclude the alleged incidents set forth in sections 1, 2, 3 (with the noted exception), and 6 is **DENIED**. Defendant may request a limiting instruction to ensure that the jury considers this

10

evidence for its proper purpose. *See, e.g.*, *United States v. Hardy*, 643 F.3d 143, 153 (6th Cir. 2011).

E.  **Pictures of S.E.**

Defendant asks the Court to exclude any and all evidence and testimony related to three pictures of S.E. that were taken on an unknown date and were found on S.E.'s cell phone. (Doc. #36, *PageID* #s 140, 148). According to Defendant, "One picture shows SE with a bloody lip and blood stains on her shirt; the second shows SE with a bloody lip; and the third shows SE's left leg with a wound on her knee." *Id.* at 140.

The Government stated in its response that it does not intend to offer these pictures or admit this evidence during its case in chief. (Doc. #52, *PageID* #s 253, 259).

Accordingly, the Court **GRANTS** Defendant's request to exclude any and all evidence and testimony related to three pictures of S.E., as the Government represents that it will not offer these pictures or seek to admit this evidence.

F.  **February 15, 2017 Text Conversation**

Defendant seeks to exclude any and all evidence and testimony related to a text conversation between S.E. and Defendant dated February 15, 2017. (Doc. #36, *PageID* #141). According to Defendant, "The conversation discusses their relationship, Mr. Crooks's mental health issues, their love for each other and a possible reference to a physical altercation wherein Mr. Crooks allegedly hurt SE." *Id.* Defendant did not attach a copy of the text conversation.

The Government asserts that it "intends to offer these text conversations to further explain the FRE 404(b) … evidence, and to show a consciousness of guilt, as well as a motive, plan, and lack of mistake pertaining to the other 404(b) assaults." (Doc. #52, *PageID* #253). The

Government attached what asserts it are screenshots of this text conversation.  (Gov't Exhibit 8, Doc. #52, *PageID* #s 275-81).

The Government's attachment is somewhat difficult to decipher.  It appears that some of the texts are cut off, *see, i.e.,* Doc. #52, *PageID* #s 278-79, and only one of the messages includes the date, *id.* at 280.  Without further information or explanation, the Court is unable to determine the relevance or admissibility of the text conversations.[2]  Absent further clarification, the Court may exclude these texts at trial. However, at this time, Defendant's request to exclude the text messages is **DENIED**.

### G. Phone Call between S.E.'s Sister and Defendant

Defendant asks to exclude any and all evidence and testimony related to a phone call between Defendant and S.E.'s sister, Chantel Ellis.  (Doc. #36, *PageID* #141).  During the call, S.E. can be heard in the background.  *Id.*  The conversation is about whether S.E. is having an affair, and Defendant "clearly believes she is having an affair." *Id.* at 151.  Defendant asserts that the conversation in irrelevant to the charges in this case.  *Id.* at 151.  Further, Defendant's counsel believes that part of the call is in Jamaican Patois.  *Id.*  As such, Defendant argues, in order to admit the recording into evidence, the transcript of the recording must be accompanied by a certified translation and the Government must present a witness qualified in Jamaican Patois to verify the translation's accuracy.  *Id.* (citations omitted).  Defendant's counsel asserts that because they have not been provided a transcript of the call by a certified expert in Jamaican Patois, the recording should be excluded.  *Id.* at 151-52.

---

[2] Although the Government asserts that these messages explain the incidents set forth in its Fed. R. Evid. 404(b) notice, the undersigned notes that the incidents described in the Government's Notice are not alleged to have occurred on or around February 15, 2017.

The Government contends that the conversation is admissible "as it contains a statement by the Defendant, is a present sense impression, and is *res gestae* to the assault that occurred directly after this conversation." (Doc. #52, *PageID* #260). Further, the Government argues that it is relevant because it "demonstrates the Defendant's state of mind and demeanor immediately before the charged offenses." *Id.*

As an initial matter, although the Government indicates that the conversation immediately preceded the alleged assault in this case, (Doc. #52, *PageID* #260), neither party provided the date or time of the conversation. Thus, the Court cannot determine whether the conversation would show Defendant's state of mind and demeanor before the alleged events.

Moreover, Defendant does not indicate who spoke in Jamaican Patois or why his counsel "believes" that part of the call is in Jamaican Patois. *See* Doc. #36, *PageID* #151. The Government provides no further clarification. Indeed, the Government did not respond to Defendant's argument that part of the call is in Jamaican Patois.

In the absence of this information, the Court is unable to determine the relevance or admissibility of the phone call. Absent further clarification, the Court may exclude information derived from this phone call at trial. However, at this time, Defendant's request to exclude this evidence is **DENIED**.

H.     **Reference to Any Witness as "Victim"**

Defendant asks that the Court order the Government to refrain from identifying any witness—specifically, S.E. or the minor children in the household—as victims. (Doc. #36, *PageID* #s 141, 152). Defendant asks that they be referred to as "alleged victims." *Id.* at 152. He further indicates that he should be entitled to a limiting instruction at trial. *Id.*

13

The Government asserts that it does not intend to refer to S.E. as victim but notes that "witnesses may inadvertently do so." (Doc. #52, *PageID* #261). The Government also states that, "during argument, the Government will refer to 'S.E.' as victim because that is precisely what the Government is alleging." *Id.* The Government argues, "The appropriate remedy should the term 'victim' become prejudicial to the Defendant is an instruction to the jury." *Id.*

Courts are divided on whether the Government should be allowed to use the term "victim" in front of the jury. Many have permitted the use of the term "victim" without limitation, while others have suggested that the term "alleged victim" is preferable. *See, e.g., United States v. Tawfik*, No. 18-17-20193, 2022 WL 866395, at *6-7 (E.D. Mich. Mar. 23, 2022) (citing cases). On the other hand, at least one court has concluded that the Government should not use the term "victim" in the presence of the jury. *See United States v. Sena*, No. 19-CR-01432, 2021 WL 4129247, at *1 (D.N.M. Sept. 9, 2021).

This Court finds that the best practice is a middle-ground approach. Accordingly, the Court will not categorically prohibit the Government or its witnesses from referring to S.E. or the minor children in the household as victims. The Court encourages the Government to refer to the alleged victims by name to avoid the issue. However, if the Government elects to use the term "victim" in some situations, it shall use the more accurate phrase "*alleged* victim." *See United States v. Powell*, No. 4:21-CR-00290-BLW, 2023 WL 3060708, at *3 (D. Idaho Apr. 24, 2023) ("It is entirely accurate to say that there is an *alleged* victim in this case, or that there is a victim of an alleged crime."). Further, if Defendant wishes for a clarifying instruction to be given, he may make such a request at trial.

IV. **CONCLUSION**

For the foregoing reasons, Defendant's Motion in Limine (Doc. #36) is **GRANTED IN PART** and **DENIED IN PART** as described above. As with all *in limine* decisions, these preliminary rulings are subject to modification should the facts or circumstances at trial differ from that which has been presented in the pre-trial motion and memorandum.

**IT IS SO ORDERED.**

August 12, 2024                                          *s/Peter B. Silvain, Jr.*
                                                                                Peter B. Silvain, Jr.
                                                                                United States Magistrate Judge